Filed 6/16/22

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E076087 |
| v. | (Super.Ct.No. RIF74491) |
| RUMAN ABDUL RICHARDSON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. John D. Molloy, Judge. Affirmed.

Valerie G. Wass, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, and A. Natasha Cortina and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

1

Petitioner Ruman Abdul Richardson acted as the getaway driver for a robbery. During the robbery, one of his coparticipants shot the victim. Thus, petitioner was convicted of first degree murder on a felony murder theory.

The trial court denied petitioner's petition for resentencing under section 1170.95.[1] We will hold that there was sufficient evidence to support the trial court's finding that petitioner was a major participant in the underlying robbery. Hence, we will affirm.

I

STATEMENT OF FACTS

On April 3, 1996, sometime after dark, petitioner parked his car at an intersection, one block (or about 300 feet) south of the Lakeview Market in Lakeview. He had removed the car's license plates. He had two passengers, Robert Smith and Tyrone Patton.

Petitioner stayed in the car while Smith and Patton entered the market. Smith told the owner to get down on the floor, then shot him in the head, killing him. Smith and Patton took loot, including food stamps and the owner's wallet. Wearing ski masks or bandannas, they ran back to the car.

A citizen who happened to be driving to the market just then saw Smith and Patton running, one of them carrying a bag and a gun. He put his car into reverse and started following them. He saw defendant standing outside the open driver's side door of the car.

---

[1]     This and all further statutory citations are to the Penal Code.

2

Defendant yelled, "Shoot him.  Shoot him."  (Or possibly "Shoot 'em" or "Shoot it.")  Patton fired one shot; in response, the citizen halted.  Smith and Patton got into the car, which drove away.

After the three were arrested, they had a conversation in a patrol car in which they essentially admitted their participation.  At one point, petitioner said, "I just told them the truth.  I said I didn't know there was no shooting involved.  I said I was driving . . . ."

II

STATEMENT OF THE CASE

In 2002, in a jury trial, petitioner was found guilty of first degree murder (§ 187) with an armed principal enhancement (§ 12022, subd. (a)(1)).  He was sentenced to a total of 26 years to life in prison.

In 2019, petitioner filed a petition for resentencing pursuant to section 1170.95.  The trial court issued an order to show cause.  After considering documentary evidence, including selected portions of the reporter's transcript of the trial, selected trial exhibits, and our opinion in petitioner's direct appeal, the trial court denied the petition.

It relied largely on petitioner's statement, "Shoot him.  Shoot him."  It found, based on that statement, that petitioner knew that his coparticipants were armed.  It added that, when petitioner made that statement, the robbery was still ongoing.  It concluded: "You commanded the use of deadly force, and deadly force was in fact deployed.  That makes you a major participant in the robbery, and that absolutely demonstrates that you

3

acted with a reckless indifference to human life." It made this finding beyond a reasonable doubt and independently from the jury's verdict.

III

THE SUFFICIENCY OF THE EVIDENCE

Petitioner contends that there was insufficient evidence that he was a major participant in the underlying robbery.

A.      *Senate Bill No. 1437.*

Under *Tison v. Arizona* (1987) 481 U.S. 137 (*Tison*), a person found guilty of murder on a felony-murder theory cannot constitutionally be sentenced to death unless he or she either (1) was the actual killer, (2) intended to kill, or (3) was a major participant in the underlying felony and acted with reckless indifference to human life. (*Id*. at pp. 150, 158.)

In 2018, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437), effective January 1, 2019. (Stats. 2018, ch. 1015, pp. 6673-6676.) SB 1437, among other things, amended section 189 so as to provide that the felony murder rule (§ 189, subd. (a)) applies to a person only if:

"(1) The person was the actual killer.

"(2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.

4

"(3) The person was *a major participant in the underlying felony and acted with reckless indifference to human life* . . . .

"[(4) T]he victim is a peace officer who was killed while in the course of the peace officer's duties, where the defendant knew or reasonably should have known that the victim was a peace officer engaged in the performance of the peace officer's duties." (§ 189, subds. (e), (f), italics added.)

In other words, SB 1437 essentially adopted the *Tison* standard for the imposition of *the death penalty for felony-murder* as California's standard of *guilt for felony-murder*.

SB 1437 also enacted section 1170.95, which allows a person who has been convicted of murder under a felony-murder theory, but who could no longer be so convicted under SB 1437, to petition to have the conviction vacated. At an evidentiary hearing on the petition, "the burden of proof [is] on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to Section 188 or 189 made [by AB 1437]." (§ 1170.95, subd. (d)(3); see also *People v. Clements* (2022) 75 Cal.App.5th 276, 294-297.) Unless the prosecution carries this burden, the conviction must be either vacated (if the underlying felony was charged) or redesignated as the underlying felony (if the underlying felony was not charged), and the petitioner must be resentenced. (§ 1170.95, subds. (d), (e).) The petitioner also must be resentenced on any remaining counts. (§ 1170.95, subd. (a).)

"We review the trial judge's fact finding for substantial evidence. [Citation.] We "'examine the entire record in the light most favorable to the judgment to determine

5

whether it contains substantial evidence — that is, evidence that is reasonable, credible, and of solid value [—] that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt.”’ [Citation.]” (*People v. Clements, supra,* 75 Cal.App.5th at p. 298.)

      B.     *Evidence That Petitioner Was a Major Participant*.

Preliminarily, there was no evidence that petitioner committed the robbery with the *intent to kill the owner*. Admittedly, his statement, “Shoot him,” showed an intent to kill the citizen who was at that moment interfering with the robbery. However, there was no evidence that petitioner intended to kill the owner of the market, or that he formed a more general intent *before* the owner of the market was shot to kill *anyone* who interfered.

Accordingly, as the trial court recognized, the key question is whether petitioner (1) was a major participant in the underlying felony *and* (2) acted with reckless indifference to human life. “These requirements significantly overlap . . . , for the greater the defendant’s participation in the felony murder, the more likely that he acted with reckless indifference to human life.” (*Tison*, *supra*, 481 U.S. at p. 153.)

Petitioner does not argue that there was insufficient evidence that he acted with reckless indifference to human life. His statement, “Shoot him. Shoot him,” was sufficient to show reckless indifference. He does argue, however, that there was insufficient evidence that he was a major participant in the robbery.

6

Given the facts here, the key case is *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*), which applied the "major participant" standard to a getaway driver.

In *Banks*, the evidence showed that defendant Matthews acted as the getaway driver in what was intended to be an armed robbery; it turned into a murder when another participant shot and killed a security guard. (*Banks*, *supra*, 61 Cal.4th at pp. 795-796.) Our Supreme Court held that this was insufficient evidence that Matthews was a major participant. (*Id*. at pp. 804-807.)

The court began by explaining that "major participant" has no "specialized or technical meaning . . . ." (*Banks*, *supra*, 61 Cal.4th at p. 801.) It simply means "that a defendant must have been actively and substantially involved in the events leading up to a murder [citation] . . . ." (*Ibid*.) To be a major participant, "a defendant's personal involvement must be substantial, greater than the actions of an ordinary aider and abettor to an ordinary felony murder . . . ." (*Id*. at p. 802.)

Relevant considerations include: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used? No one of these considerations is necessary, nor is any one of them

7

necessarily sufficient. . . . [T]he ultimate question [is] whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major' [citations]." (*Banks*, *supra*, 61 Cal.4th at p. 803.)

In the case before it: "No evidence was introduced establishing Matthews's role, if any, in planning the robbery. No evidence was introduced establishing Matthews's role, if any, in procuring weapons. . . . [N]o evidence was introduced that Matthews [or his coparticipants] had themselves previously committed murder, attempted murder, or any other violent crime. . . . [P]articipation in an armed robbery, without more, does not involve 'engaging in criminal activities known to carry a grave risk of death.' [Citation.] During the robbery and murder, Matthews was absent from the scene, sitting in a car and waiting. There was no evidence he saw or heard the shooting, that he could have seen or heard the shooting, or that he had any immediate role in instigating it or could have prevented it. [¶] On this record, Matthews was, in short, no more than a getaway driver, guilty . . . of 'felony murder *simpliciter*' [citations] but nothing greater." (*Banks*, *supra*, 61 Cal.4th at p. 805, fn. omitted.)

As the trial court here ruled, petitioner's statement, "Shoot him," distinguishes this case from *Banks*. Up until that point, for all the evidence showed, petitioner was no more than a getaway driver. That statement, however, shows that he was aware that his coparticipants were armed. Even more important, it shows that he took on — or already

8

had — a role in directing the robbery and the conduct of his coparticipants.  He had the right to decide to use lethal force and to order his coparticipants to do so.

In *Banks*, the court observed, "In cases where lethal force is not part of the agreed-upon plan, absence from the scene may significantly diminish culpability for death. [Citation.]"  (*Banks*, *supra*, 61 Cal.4th at p. 803, fn. 5.)  Here, petitioner was absent from the scene of the murder.  Nevertheless, by saying "Shoot him," he showed that using lethal force, if necessary, was within the scope of the agreed-upon plan.  This is not a case in which murder "was the farthest thing from his mind."  (Cf. *In re Bennett* (2018) 26 Cal.App.5th 1002, 1020.)

Admittedly, petitioner ordered his coparticipant to shoot the citizen, who was unhurt, rather than the owner of the market, who was the victim of the murder.  Even so, what is required is that petitioner was a major participant in a robbery known to carry a grave risk of death, not that he was a major participant in the murder.  Saying "Shoot him" is sufficient to satisfy that requirement.  Finally, as the trial court also ruled, when defendant said it, the robbery was still underway, because the robbers had not yet reached a place of temporary safety.  (*People v. Debose* (2014) 59 Cal.4th 177, 205.)

We therefore conclude that there was sufficient evidence that petitioner was a major participant in the robbery.  Hence, he was not entitled to resentencing.

IV

DISPOSITION

The order denying the petition is affirmed.

CERTIFIED FOR PUBLICATION

RAMIREZ _____
P. J.

We concur:

CODRINGTON _____
J.

SLOUGH _____
J.